UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BARRY COLEMAN,

        Petitioner,         Case Number: 2:12-CV-11635
                                          HON. GEORGE CARAM STEEH

v.

LLOYD RAPELJE,

        Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Petitioner Barry Coleman filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. Coleman is a state prisoner in the custody of the Michigan Department of Corrections pursuant to a second-degree murder conviction. He argues that his conviction was obtained in violation of his constitutional rights because he received ineffective assistance of trial counsel and the prosecutor committed misconduct. Respondent argues that the claims are procedurally defaulted and/or meritless. The Court finds that habeas relief is not warranted and denies the petition.

### I. Background

Coleman's convictions arise from the murder of Tiffany Cody, whose body was discovered in the Price Nature Center in Bridgeport Township, Michigan on September 7, 2008. The Michigan Court of Appeals described the circumstances leading to Coleman's conviction as follows:

> Underlying this case is a debt for which death was exacted as payment. The deceased victim was Tiffiny Cody. Cody was known among friends and acquaintances for her drug use. Defendant was known as a drug dealer. Sometime in early September 2008, Cody attempted to sell

defendant a car she had previously stolen for several hundred dollars. However, after receiving the money from defendant Cody was unable to obtain the proper title for the vehicle or find a different buyer, so defendant demanded a refund.  Notably, two days before Cody's death, on September 5, 2008, defendant threatened that if he was not repaid, "he would kill [Cody]," and later exclaimed: "[Cody] better not be playing with my money or I'll kill this bitch."

The next day, Cody called two acquaintances.  The first, Karen Withers, who was also the stolen vehicle's former owner, testified that Cody sounded fearful on the phone and begged for money or the car's title because she was in trouble and in fear for her life.  A man identifying himself only as "Brandon" also spoke to Withers and angrily threatened that "some way or somehow someone was going to pay for it today." Withers, an Indiana resident, told Cody that she would wire $800 to a Kroger in Bridgeport, Michigan, and subsequently called 911 to alert the local authorities.  Local police, however, did not find Cody at Kroger.  The second witness, Cody's former mother-in-law, testified that Cody requested $300 because she was in a lot of trouble since "they were going to kill her."  An unidentified man also spoke on the phone and indicated that this situation had persisted for a couple of days.

On the morning of September 7, 2008, Cody's body was found near the parking lot of the Price Nature Center in Bridgeport Township. The autopsy revealed that Cody had sustained three blows to the head and had died from blunt force trauma inflicted by a "considerable" amount of force.  Experts opined that the blows resulted from a fist or alternatively from Cody's head striking concrete pavement – either due to a fall or by force.

Apparently following up on their investigation, police located defendant on October 10, 2008.  Following a brief chase, officers subdued defendant with a taser and arrested him.  During his subsequent police interview, defendant claimed he had purchased a vehicle from Cody, but upon learning the vehicle was stolen, had required Cody to call friends and relatives to get his money.  When Cody came up empty-handed, defendant claimed that he drove her to the nature center where a fight ensued.  Defendant admitted punching Cody's head three times and kicking her, but claimed she injured her head when falling.  According to defendant, he did not intend to kill Cody.

*People v. Coleman,* No. 296756, 2011 WL 2423814, *1 (Mich. Ct. App. June 16, 2011).

Coleman filed a direct appeal of his conviction, raising these claims through

counsel: (i) Coleman should not have been sentenced as a habitual fourth offender

because he had only two prior felony convictions; and (ii) insufficient evidence was presented to establish second-degree murder. Coleman filed a pro-per supplemental brief, raising the following additional claims: (i) ineffective assistance of counsel; and (ii) prosecutorial misconduct. The Michigan Court of Appeals affirmed Petitioner's conviction and sentences. *Id.*

Coleman filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims raised in the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. Coleman,* 490 Mich. 972 (Mich. 2011).

Coleman then filed the pending habeas petition. He raises these claims:

I. Petitioner was denied his Sixth Amendment right to the effective assistance of counsel in the following ways: (1) trial counsel did not object to the prosecutor's improper statements about forensic expert witness Dr. Spitz being paid to testify; and (2) trial counsel failed to object to the prosecutor's misstatement of the evidence when he stated that the Petitioner by his own admission sold Ms. Clements some drugs in order to finance getting away to Chicago.

II. Prosecutorial misconduct denied the Petitioner due process of law in the following ways: (1) the prosecutor made improper statements during rebuttal closing argument about forensic expert witness Dr. Spitz being paid to testify; and (2) the prosecutor misstated the evidence when he stated in closing and rebuttal closing argument that "defendant by his own admission sold Ms. Clements some drugs in order to finance getting away to Chicago."

## II. Standard

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under the AEDPA, a state prisoner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>   (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413). However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, —, 131 S. Ct. 770, 789 (2011), (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the

claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams,* 529 U.S. at 412. Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007), *citing Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

### III. Discussion

#### A. Prosecutorial Misconduct Claim

Coleman's prosecutorial misconduct claim concerns the prosecutor's closing argument. Coleman claims that the prosecutor committed misconduct by implying that

defense expert Daniel Spitz was paid to testify a certain way and by arguing facts not in evidence when he stated that Coleman sold drugs in order to finance a trip to Chicago.

Respondent argues that this claim is procedurally defaulted. The Court finds it unnecessary to address the question of procedural default. It is not a jurisdictional bar to review of the merits of an issue, *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits," *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). Application of a procedural bar would not affect the outcome of this case, and it is more efficient to proceed directly to the merits.

The "clearly established Federal law" relevant to a habeas court's review of a prosecutorial misconduct claim is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). *Parker v. Matthews*, __U.S.__, 132 S. Ct. 2148, 2153, (June 11, 2012). In *Darden,* the Supreme Court held that a "prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). This Court must ask whether the Michigan Court of Appeals' decision denying Petitioner's prosecutorial misconduct claims "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Parker*, __ U.S. at __, 132 S. Ct. at 2155, (quoting *Harrington*, 562 U.S. at __, 131 S. Ct. at 786-87.

First, Coleman objects to the prosecutor's treatment of the defense's expert witness, Dr. Spitz, in closing argument. Dr. Kanu Virani, an expert in forensic pathology

who performed Cody's autopsy, testified for the prosecution. Dr. Virani testified that, when her body was found, Cody had been dead approximately 8 to 10 hours. He testified that she suffered three separate blows to her head. He concluded that the injuries were caused by a blunt object. The blows to her head were made with considerable force because they caused extensive brain injury. Dr. Virani concluded that Cody's death was caused by blunt-force head trauma. The defense expert witness, Dr. Spitz, disagreed with Dr. Virani's conclusion that Cody died as a result of blunt force trauma. He testified that Cody's injuries were consistent with a fall, and Cody's head striking a concrete or asphalt surface. Dr. Spitz further testified that he was paid $300 to $325 an hour and a flat $3,000 fee to testify. During rebuttal closing argument, the prosecutor discussed Dr. Spitz's testimony as follows:

> When you look at the expert witness testimony, Judge Boes will tell you that you are not required to believe everything that an expert tells you. You are to use your own judgment. Look at what facts the expert bases his opinion on. We have Dr. Virani and Dr. Spitz. Who do you believe? Who actually did the autopsy? Dr. Virani. Who actually talked to the officers involved in this case? Dr. Virani. Whose opinion as to the number and location of the blows is backed up by the physical evidence, the exterior bruising on both sides of Tiffiny Cody's face? Dr. Virani.
>
> Dr. Spitz was paid $3,000 to testify here this morning. And what was received for his $3,000? Well, he never contacted or consulted with Dr. Virani to see why is there a difference of opinion here. He never examined any of the tissue samples taken by Dr. Virani at the autopsy. He never talked to the officers. He never viewed the video of the defendant where the defendant recreates what happens, to see does how the defendant describes this crime, does this fit into his theory. Even though he was retained in May of this year, he never prepared a report, even though he had the benefit of reviewing Dr. Virani's report. Rather nice way of insuring that no doctor could review his findings.
>
> The defense implies that Dr. Virani does a lot of autopsies, he's kind of slip-shod, does so many of them, he just quickly goes in and does his job and gets out.

> Dr. Spitz is so busy being the medical examiner at two different counties and being on cable TV and teaching and doing all those other wonderful things that was described in his testimony, that he can take $3,000, look at a piece of paper, and then say ah, he's wrong. Does that sound professional to you? Does that sound reasonable to you? Even then, he did agree with Dr. Virani, there were multiple blows to the face of Tiffiny Cody. And he also agrees that a grass or dirt surface could not cause these injuries.
>
> Take a look at Exhibit No. 3. This is Tiffiny Cody's shoe, the heel of it, her body, as she lies face down in the grass and dirt of the parking lot at Price Nature Center. Dr. Spitz himself said that surface couldn't cause the injuries he saw. The police found no evidence that somehow Tiffiny Cody had moved after she had been assaulted. No blood trail, no trace evidence. And Dr. Spitz made a big deal about, oh, there are, I believe he called them satellite pockets, the bruising on Tiffiny's face. He never went to the scene to see if that surface could support that conclusion.

Tr., 11/24/09, at 61-63.

The Michigan Court of Appeals held that the prosecutor's argument was not improper because the prosecutor's argument fairly attacked the thoroughness of Dr. Spitz's investigation relative to his fee, and the argument was based upon the evidence presented. *Coleman*, 2011 WL 2423814 at *3. Coleman has not shown that the prosecutor's conduct was improper. The facts that Dr. Spitz was compensated to testify, was not present for the autopsy, did not contact Dr. Virani, and was busy with other aspects of his professional life were evidence in the case. As discussed by the Michigan Court of Appeals, the prosecutor connected his comments about Dr. Spitz to the evidence presented in the case. The prosecutor was permitted to argue how Dr. Spitz's opinion regarding Cody's cause of death was inconsistent with other evidence introduced at trial. Finally, the evidence supporting Petitioner's second-degree murder conviction was very strong. Consequently, the decision of the Michigan Court of Appeals was a reasonable application of Supreme Court precedent.

Coleman next argues that the prosecutor committed misconduct by stating in closing and rebuttal arguments that Coleman sold drugs to Toni Clements as a means to finance his flight to Chicago because he feared police in Michigan would otherwise arrest him. Specifically, the prosecutor argued, in closing argument:

> The defendant then by his own admission, talking to the detectives, sells Miss Clements some drugs in order to finance his getting away to Chicago. And what's so important all of a sudden he has to run to Chicago? The People contend to you that he knew that he was in danger here in Saginaw, in danger for what he had done the night before and he darn well knew it.

Tr., 11/24/09, 41.

And, in rebuttal:

> The defense says that the reason why the defendant broke down at the end of the statement was because it hit him, what he had finally done. It hit him? A month later, after he's fled to Chicago, now it hits him? It didn't hit him. He knew all along what he had done. He told people later, I beat her pretty badly.

*Id.* at 65.

The Michigan Court of Appeals held that the argument was not improper because the prosecutor was free to argue all reasonable inferences relating to his theory of the case and this argument was a reasonable inference based upon the evidence presented. *Coleman*, 2011 WL 2423815 at *3. "[T]he *Darden* standard is a very general one, leaving courts 'more leeway ... in reaching outcomes in case-by-case determinations.'" *Parker*, __ U.S. __, 132 S.Ct. at 2155, (*quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Michigan Court of Appeals reasonably disposed of Coleman's claim. It was not improper for the prosecutor to argue that Coleman used the money earned selling drugs to finance his trip to Chicago and that he fled to Chicago to avoid arrest. Even if the court of appeals erred in its holding,

habeas relief would be denied because the court of appeals' decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S., at __, 131 S. Ct., at 786-787. Habeas relief, therefore, is denied.

### B. Ineffective Assistance of Counsel Claim

Coleman also argues that habeas relief should be granted because his attorney was ineffective in failing to object to the alleged instances of prosecutorial misconduct.

To establish that she received ineffective assistance of counsel, a petitioner must show, first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the petitioner. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner may show that counsel's performance was deficient by establishing that counsel's performance was "outside the wide range of professionally competent assistance." *Id.* at 689. This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687.

To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A court's review of counsel's performance must be "highly deferential." *Id.* at 689. Habeas relief may be granted only if the state-court decision unreasonably applied the standard for evaluating ineffective-assistance-of-counsel claims established by *Strickland*. *Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009). "The question is not whether a federal court

believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Id.* at 123 (internal quotation omitted).

The Michigan Court of Appeals held that Coleman's prosecutorial misconduct claims were meritless. This Court has held that the state court's conclusion regarding the prosecutorial misconduct claims was not contrary to or an unreasonable application of Supreme Court precedent. Therefore, counsel was not ineffective in failing to object to proper conduct. *See Kittka v. Franks*, 539 F. App'x 668, 674 (6th Cir. 2013) (holding counsel cannot be ineffective for failing to make a futile objection).

### IV. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings requires that a court "issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In this case, the Court concludes that reasonable jurists would not debate the conclusion that the petition does not state a claim upon which habeas relief may be granted. Therefore, the Court will deny a certificate of appealability.

## V. Conclusion

Accordingly, **IT IS ORDERED** that the petition for a writ of habeas corpus and a certificate of appealability are **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.

Dated:  March 11, 2015

                                      s/George Caram Steeh
                                      GEORGE CARAM STEEH
                                      UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on March 11, 2015, by electronic and/or ordinary mail and also on Barry Coleman #363101, Saginaw Correctional Facility, 9625 Pierce Road, Freeland, MI 48623.

s/Barbara Radke
Deputy Clerk